874 So.2d 297 (2004)
STATE of Louisiana
v.
Chauncey D. TAYLOR.
No. 04-KA-54.
Court of Appeal of Louisiana, Fifth Circuit.
April 27, 2004.
*298 Paul D. Connick, Jr., District Attorney, Terry M. Boudreaux, Juliet Clark, Kia Habisreitinger, Bobby Malbrough, Assistant District Attorneys, Parish of Jefferson, State of Louisiana, Gretna, LA, for Plaintiff/Appellee.
Margaret S. Sollars, Louisiana Appellate Project, Thibodaux, LA, for Defendant/Appellant.
Panel composed of Judges EDWARD A. DUFRESNE, JR., SOL GOTHARD, and THOMAS F. DALEY.
SOL GOTHARD, Judge.
Defendant, Chauncey D. Taylor, appeals his convictions and sentences on three criminal charges. For reasons that follow, we affirm.
The Jefferson Parish District Attorney filed a bill of information charging Taylor with attempted second degree murder, a violation of La. R.S. 14:30.1; 14:27 (count one); possession of a firearm by a convicted felon, a violation of La. R.S. 14:95.1 (count two); and possession with intent to distribute cocaine, a violation of La. R.S. 40:967(A) (count three). Taylor pled not guilty at arraignment.
Defendant proceeded to trial before a twelve-person jury on February 10 and 11, 2003. On count one, the jury returned a responsive verdict of guilty of aggravated battery, a violation of La. R.S. 14:34. The jury found defendant guilty as charged on count two. On count three, the jury returned a responsive verdict of guilty of possession of cocaine, a violation of La. R.S. 40:967(C).
On February 24, 2003, the trial judge denied defendant's motion for new trial and defendant waived sentencing delays. Thereafter, the judge imposed a sentence of ten years of imprisonment at hard labor on count one, and fifteen years of imprisonment at hard labor on count two. The trial judge ordered the sentences on counts one and two to be served without benefit of parole, probation, or suspension of sentence. On count three, the trial judge sentenced defendant to five years of imprisonment at hard labor. All of these sentences were ordered to be served concurrently with each other. That same day, the State filed a multiple offender bill of information alleging that defendant is a third felony offender, and seeking to enhance the aggravated battery sentence. Defendant initially denied the allegations therein, but subsequently stipulated that he was a third felony offender. The trial judge vacated the original aggravated battery sentence and imposed a sentence of seventeen and one-half years at hard labor. This timely appeal follows.
FACTS
On June 28, 2001, at approximately 5:44 p.m., defendant Taylor and the victim, Todd Washington, had an argument at the Villa D'Ames Apartments in Marrero where they both lived. The argument escalated into a fight, which ended with Taylor shooting Washington in the shoulder, leg, and thigh.
According to Washington, he was downstairs talking to an acquaintance when Taylor began an argument because defendant believed Washington was "disrespecting" the acquaintance's "old lady." Washington said that defendant came up to him, but Washington pushed him away. Taylor stated that he was going to get a gun, so Washington walked upstairs towards his apartment in a separate building to get away from the area.
Washington was outside of his apartment door when Taylor approached him from behind and hit him in the head with a gun. Thereafter, Washington "charged" Taylor and pushed him toward the balcony *299 in an attempt to get the gun. Washington, who was holding Taylor half-way over the balcony, released him because Washington did not believe Taylor would shoot him. However, when freed, Taylor shot Washington in the left leg. As Washington fell, Taylor shot him again. Taylor started walking away; then he stopped, turned and shot Washington a third time. Washington was later treated at Charity Hospital, where it was discovered that he had cocaine on his person.
Tiffany Isaac, a cousin of Washington's girlfriend, was a witness to the events leading up to the shooting. Ms. Isaac testified that she saw a fight between Washington and a person she later identified as Taylor. Ms. Isaac observed the fight from her apartment building, which was across a field from the building where Taylor and Washington were fighting. During the fight, Ms. Isaac heard two gunshots, but did not see who fired the gun. After the two shots were fired, Ms. Isaac saw Taylor walk away, turn around and shoot Washington.
On cross-examination, Ms. Isaac elaborated on her testimony. Ms. Isaac acknowledged that she had given a statement to the police in which she gave information which conflicts with her testimony at trial. In the statement she said that Washington was sitting outside of his upstairs apartment when a person, whom she later identified as defendant, approached. Ms. Isaac told the police that it appeared as if Taylor had received something from Washington and then walked away. She acknowledged she told the police that Washington then chased Taylor and started the fight. However, at trial she testified that she did not know whether Taylor started the fight with Washington. Ms. Isaac testified it appeared as though Washington had attempted to throw Taylor over the balcony. Finally, Ms. Isaac acknowledged that Washington sold drugs. Ms. Isaac testified on redirect examination that Taylor and Washington were "tussling" on the concrete when she heard the two shots. She reiterated that she did not know who had fired the two shots during the fight. However, after the two shots were fired, she saw Taylor walk away, turn around and shoot Washington.
Taylor's girlfriend, Shanika Triplett, testified that she lived with him in the apartment complex. On the day in question, Taylor entered the apartment with scratches on his face. He was very upset and was angry with the "bald head dude with the golds in his mouth." Ms. Triplett testified that she heard Taylor say, "I'm going to show you," and that she heard him cock a gun as he left the apartment. Seconds later, Ms. Triplett heard two to three gun shots and Taylor re-entered the apartment holding a gun and a tampon box.
Deputy Madere was one of the first officers on the scene. He testified that he discovered Washington with gunshot wounds to the left leg, buttocks, and left chest area. Deputy Madere had a discussion with Washington regarding the perpetrator's identity, but Washington did not identify the perpetrator. Paramedic Clint Gaspard responded to the scene and spoke to Washington. However, Washington only told Gaspard that he was shot, and did not identify the perpetrator. Gaspard observed that Washington had sustained a laceration to his forehead, a gunshot wound to the left anterior shoulder, a gunshot wound to the right upper thigh, and a gunshot wound to the left lower leg below the knee.
Shortly after the police and paramedics arrived at the apartment complex, the police knocked on Ms. Triplett's door and she *300 let the officers inside. Deputy Jason Barrette was one of the officers who entered the apartment. Deputy Barrette testified that he arrested Taylor without incident after discovering him in a bathroom. Pursuant to Ms. Triplett's consent, the officers searched the apartment. The scene investigator, Lieutenant Thurman, testified that he searched the hall closet and found a gun and magazines for the weapon. He also found crack cocaine inside of a tampon box. Later that evening, Lieutenant Thurman returned to search the apartment again with Ms. Triplett's consent. Ammunition was discovered in the pocket of a jacket and $150 was found in the apartment. The State's ballistics expert linked the gun found in the closet to three spent casings recovered from the scene of the shooting.
After Taylor was arrested, Sergeant Drury interviewed him at the Detective Bureau. Taylor waived his constitutional rights and made two taped statements to Sergeant Drury. The taped statements were played at trial for the jury, and the tapes and transcripts of the statements were admitted into evidence. In the first statement, Taylor related that the fight was precipitated by Washington's behavior of motioning for Taylor's friend to approach. Taylor felt that Washington's behavior was disrespectful to the friend's wife, in the event that she had never seen that "kind of transaction." Taylor and Washington had a heated conversation regarding Washington's behavior that led to a physical fight. Taylor asked Washington if he wanted to "go play pistols now," and Washington replied that he was going to get his pistol. Taylor retrieved his gun, but Washington was knocking on an apartment door as Taylor approached. According to Taylor, they started hitting each other again and the Taylor struck Washington with the pistol. Thereafter, Washington charged him and they resumed fighting. Taylor shot the gun twice and Washington fell. Taylor admitted he turned around as he was leaving and shot again, but he was unsure whether the shot hit Washington. According to Taylor, Washington was holding onto Taylor's shirt while falling. Taylor acknowledged that he was very angry and that he had a problem with his temper.
In the second statement, Taylor said that he had put approximately ten or twenty rocks of crack cocaine inside of a tampon box in the hall closet of the apartment. He had planned to sell some of the cocaine and use some of it. He denied that he had purchased the drugs on the day of the shooting, but said that he had placed them inside of the box that day. Taylor also reiterated that the shooting was about respect, and denied that the shooting was related to the drugs.
Taylor testified on his own behalf at trial. He admitted to prior convictions of possession of cocaine, possession of drug paraphernalia, and flight from a police officer. His testimony at trial differs in some respects from his statements to police. At trial Taylor stated the argument he had with Washington on the day in question was about drugs. Contrary to his prior statement, defendant denied that the person that had pulled up in the car had anything to do with the shooting. Taylor said that he had paid Washington for crack in advance, but Washington had not given him the drugs. After a heated exchange, Washington instructed Taylor to come to his apartment to get the drugs. Because Washington also told Taylor that he "might have something else around there for you," Taylor retrieved his gun for "protection reasons," and approached Washington. Washington gave Taylor his drugs. As Taylor walked away, Washington charged him and another fight ensued. They were wrestling and Washington *301 pushed Taylor over the balcony. At that point, Taylor shot Washington in the leg. Because Taylor believed that Washington was reaching for something, he fired again and hit Washington in the shoulder. Washington reached behind himself as he went down. Taylor was backing up and stumbled. He fired again, hitting Washington in the leg and ran. Taylor denied that he struck Washington with the gun. Taylor said that he believed his life was in danger when he fired the gun as Washington attempted to push him over the balcony. Further, Taylor testified that he did not intend to kill Washington. He pointed out that there were seven rounds left in the gun, and he could have killed Washington if that was his intent. Taylor also admitted that he was not truthful to Detective Drury when he made the statements.
LAW
In his only assignment of error, defendant Taylor contends the evidence was legally insufficient to support his aggravated battery conviction because the State failed to prove beyond a reasonable doubt that his actions were not in self-defense. Specifically, defendant contends that Washington's testimony was not credible. Defendant further contends that his own testimony and Tiffany Isaac's testimony established that his actions were in self-defense.
The State responds that the jury rationally rejected defendant's testimony relating to self-defense, and that the evidence was sufficient to support the conviction.
In reviewing the sufficiency of evidence, an appellate court must determine that the evidence, whether direct or circumstantial, or a mixture of both, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime have been proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Tilley, 99-0569 (La.7/6/00), 767 So.2d 6, 24, cert. denied, 532 U.S. 959, 121 S.Ct. 1488, 149 L.Ed.2d 375 (2001).
Although defendant was charged with attempted second degree murder, the jury found him guilty of the lesser charge of aggravated battery, a violation of La. R.S. 14:34. To support a conviction of aggravated battery, the State has the burden of proving three elements: 1) that the defendant intentionally used force or violence against the victim; 2) that the force or violence was inflicted with a dangerous weapon; and 3) that the dangerous weapon was used in a manner likely to cause death or great bodily harm. State v. Rainey, 98-436 (La.App. 5 Cir. 11/25/98), 722 So.2d 1097, 1102, writ denied, 98-3219 (La.5/7/99), 741 So.2d 28.
Defendant does not argue that the State failed to prove the elements of aggravated battery. Rather, defendant contends the jury should have found him not guilty because the State failed to carry its burden of proving that he did not act in self-defense.
Justification is defined in La. R.S. 14:18, which provides in pertinent part:
The fact that an offender's conduct is justifiable, although otherwise criminal, shall constitute a defense to prosecution for any crime based on that conduct. This defense of justification can be claimed under the following circumstances:
....
(7) When the offender's conduct is in defense of persons or of property under any of the circumstances described in Articles 19 through 22.
The use of force or violence upon another person is justified under certain circumstances as provided in La. R.S. 14:19:

*302 The use of force or violence upon the person of another is justifiable, when committed for the purpose of preventing a forcible offense against the person or a forcible offense or trespass against property in a person's lawful possession; provided that the force or violence used must be reasonable and apparently necessary to prevent such offense, and that this article shall not apply where the force or violence results in a homicide.
Additionally, an aggressor generally cannot claim the right of self-defense, as provided in La. R.S. 14:21:
A person who is the aggressor or who brings on a difficulty cannot claim the right of self-defense unless he withdraws from the conflict in good faith and in such a manner that his adversary knows or should know that he desires to withdraw and discontinue the conflict.
When a defendant claims self-defense in a homicide case, the State bears the burden of proving beyond a reasonable doubt that the defendant did not act in self-defense. See, State v. Garcia, 483 So.2d 953, 956 (La.1986); State v. Batiste, 96-1010 (La.App. 5 Cir. 1/27/98), 708 So.2d 764, 771, writ denied, 98-0913 (La.9/4/98), 723 So.2d 954.
Defendant observes that the Louisiana appellate courts are split on the issue of whether the State or the defendant bears the burden of establishing that the defendant did not act in self-defense in a non-homicide case.[1] Nevertheless, defendant contends that the State failed to prove beyond a reasonable doubt that defendant did not act in self-defense.
In State v. Freeman, 427 So.2d 1161, 1163 (La.1983), the Louisiana Supreme Court indicated in dicta that the defendant in a non-homicide case may have the burden of proving self-defense by a preponderance of the evidence. However, the Freeman court declined to resolve the issue, and found that the State carried its burden of proof, even assuming that the State had to prove beyond a reasonable doubt that the defendant did not act in self-defense.
In State v. Barnes, 491 So.2d 42, 47 (La.App. 5 Cir.1986), this court concluded that the defendant has the burden of proving by a preponderance of the evidence that his actions were in self-defense or in defense of others in a non-homicide case.[2] That holding was reinforced by State v. Steele, 01-1414 (La.App. 5 Cir. 9/30/02), 829 So.2d 541, 547, writ denied, 02-2992 (La.9/19/03) 853 So.2d 632, when this court stated that;
.....the law in this circuit is that the defendant, in a non-homicide case, has the burden to establish, by a preponderance of the evidence, that he acted in self-defense. State v. Barnes, 491 So.2d 42, 44-47 (La.App. 5 Cir.1986).
(Emphasis in original.)
We do not find it necessary to re-visit the issue of who bears the burden of proof in a non-homicide case because we find that in the present case a rational trier of fact, viewing the evidence in the light most favorable to the prosecution, could find that the State proved beyond a reasonable doubt that the defendant did not act in self defense.
*303 The State's evidence consisted primarily of the testimony of Ms. Triplett, Ms. Isaac, Washington and defendant's statements to police. Ms. Triplett testified that defendant was angry at the victim when defendant entered the apartment with scratches on his face. Ms. Triplett heard defendant cock a gun and say, "I'm going to show you."
Ms. Isaac testified that Washington started the physical altercation that she observed. Further, she testified that she did not see defendant fire the two shots while Washington and defendant were wrestling. Ms. Isaac acknowledged that it appeared to her that Washington was attempting to throw defendant off of the balcony. However, Ms. Isaac testified that she saw defendant "walk off and turn around and shoot again."
Washington testified that defendant was outside of his apartment door when defendant approached him from behind and hit him in the head with a gun. Washington admitted he "charged" defendant and pushed him toward the balcony in an attempt to get the gun. Washington said that he fell to the ground after the first shot and defendant shot twice more after he fell.
In the first statement to the police, defendant admitted that he knew Washington had not retrieved his gun. Defendant said that he struck Washington in the head with the gun when they resumed fighting near Washington's apartment door. Defendant also said that he fired the gun twice and Washington fell to the ground. Defendant admitted that he turned around and fired the gun again when Washington was on the ground. Defendant characterized the event as "[a] little temper thing, no misunderstanding, that's all it was." At trial, however, defendant contended the fight revolved around drugs, as opposed to respect, as he had initially told police. Additionally, defendant claimed the two shots during the fight were in self-defense, but that the third shot was fired as he was "backing up ... stumbling."
Defendant cites State v. Perron, 94-0761 (La.App. 4 Cir. 12/27/96), 686 So.2d 994, 997, writ denied, 97-0090 (La.1/24/97), 686 So.2d 869, in support of this assignment. However, that case is inapplicable. Perron held that the evidence was insufficient to establish the defendant's identity beyond a reasonable doubt. In the present case, the perpetrator's identity is not at issue. Defendant admitted at trial that he shot Washington multiple times and defendant does not argue in his brief that the State failed to prove any of the elements of the offense. Rather, defendant argues the jury should have found him not guilty because the State failed to carry its burden of proving that he did not act in self-defense.
After considering all of the evidence, the jury obviously concluded that defendant did not act in self-defense when he shot Washington. It is the role of the fact-finder to weigh the credibility of the witnesses, and a reviewing court will not second-guess the credibility determinations of the trier of fact beyond the sufficiency evaluations under the Jackson standard of review. State ex rel. Graffagnino v. King, 436 So.2d 559, 563 (La.1983). Accord, State v. Wallace, 00-1745 (La.App. 5 Cir. 5/16/01), 788 So.2d 578, 584, writ denied, 01-1849 (La.5/24/02), 816 So.2d 297. "The reviewing court is not permitted `to decide whether it believes the witnesses or whether the conviction is contrary to the weight of the evidence.'" State v. Marcantel, 00-1629 (La.4/3/02), 815 So.2d 50, 56 (quoting State v. Mussall, 523 So.2d 1305, 1311 (La.1988)). Thus, even assuming that the State was required to bear the burden of proving the defendant did not act in self-defense beyond a reasonable double, *304 viewing the evidence in the light most favorable to the prosecution, the State carried that burden. We find no merit in this assignment of error.
The record was reviewed for errors patent, in accordance with La.C.Cr.P. art. 920. In that review we find several discrepancies between the commitment/minute entry and the transcript. First, the transcript reflects that the trial judge imposed an original sentence of ten years at hard labor on count one (aggravated battery), while the commitment indicates that defendant received a sentence of seventeen and one-half years at hard labor on count one. Also, while the transcript reflects that defendant waived sentencing delays after the denial of the new trial motion, the commitment does not.
As to the multiple bill, the commitment fails to reflect which original sentence the trial judge vacated, while the transcript reflects that the trial judge vacated the sentence on count one and imposed an enhanced sentence of seventeen and one-half years at hard labor.
It is also noted the commitment reflects that the "[s]entence on counts 1 and 2 is to be served without benefit of parole, probation of suspension of sentence." Although the transcript reflects that the original sentence on count one, as well as the sentence on count two, were ordered to be served without benefits, the transcript reflects that the trial judge did not impose the enhanced sentence on count one without benefits.
Generally, when there is a discrepancy between the minutes and the transcript, the transcript prevails. State v. Lynch, 441 So.2d 732, 734 (La.1983). Accordingly, we remand the matter to allow the trial judge to correct the commitment to conform to the transcript as noted.
It is noted that defendant's sentence on count two is illegally lenient because the trial judge failed to impose a mandatory fine as required by La. R.S. 14:95.1B. However, the State has not objected to the sentence. Although this court has the authority to correct an illegally lenient sentence despite the failure of the State to raise the issue, we refrain from taking action on our own motion. See; State v. Jordan, 02-820 (La.App. 5 Cir. 12/30/02), 836 So.2d 609; State v. Turner, 03-325 (La.App. 5 Cir. 6/19/03), 850 So.2d 811, writ denied 03-2170 (La.1/30/04), 865 So.2d 74.
We also note defendant's multiple offender sentence is illegally lenient because the trial court failed to impose the sentence without benefit of probation or suspension of sentence as required by La. R.S. 15:529.1(G). However, the enhanced sentence is deemed to contain these restrictions. State v. Williams, 00-1725 (La. 11/28/01), 800 So.2d 790. Accordingly, no action is required by this court to address this error.
For the foregoing reasons, the convictions and sentences are affirmed and the matter is remanded to the trial court for correction of the minute entry/commitment in accordance with this opinion.
AFFIRMED AND REMANDED.
NOTES
[1] See, State v. Rainey, supra. 722 So.2d at 1103-1105 for a discussion of the split in the circuits on this issue.
[2] The specific issue under consideration in Barnes was whether the trial judge had erred in giving a jury charge that placed the burden of proving self-defense or defense of another by a preponderance of the evidence on the defendant.