SUSAN M. CHEHARDY, Judge.
|20n appeal, T.M.[1] challenges her adjudications as delinquent, arguing that the evidence was insufficient to support her adjudications pursuant to La. R.S. 14:34. For the following reasons, we affirm her convictions and sentences.

Facts and Procedural History

On the morning of Friday, November 11, 2011, L.A., a 14-year-old, eighth grader at Harry S. Truman Middle School in Marrero, Louisiana, was in P.E. class. L.A. was seated on the floor along the wall observing other students participating in P.E. when T.M. walked by her. L.A. noticed that T.M. was wearing a black mitten on one hand. As T.M. walked past L.A., T.M. “dapped”[2] L.A.’s hand with her gloved, partially-opened hand. L.A. felt a sting but did not notice anything in T.M.’s hand. Seconds later, L.A. noticed that her hand was bloody.
Although L.A. initially informed school authorities that she had cut herself with her ID card, when she was subsequently questioned in the principal’s office |aby a Jefferson Parish Sheriffs Deputy, she admitted that T.M. had cut her. At trial, the State introduced a photograph of L.A.’s right hand taken on November 14, 2011, that showed a straight, narrow laceration about one inch long on her palm.
On November 11, 2011, D.D., a sixth grader at Truman Middle who was friends with T.M.’s younger sister, also had P.E. class at the same time as T.M. While the classes were in the gym, T.M. approached D.D. and “dapped her off’ with a closed, gloved hand. D.D. testified that she did not see anything in T.M.’s hand. Moments later, D.D. noticed she had a cut on her right wrist. T.M. immediately put pressure on D.D.’s wound and accompanied D.D. to the office to get a Band-Aid. As they walked, T.M. said “she didn’t know a pencil sharpener razor[3] could cut somebody.” [4] Later, T.M. acknowledged that she had cut L.A. too. At trial, the State introduced a photograph of D.D.’s right wrist taken on November 11, 2011, that showed a straight, narrow laceration about two inches long on her wrist.
On December 22, 2011, the Jefferson Parish District Attorney filed two delinquency petitions in juvenile court naming T.M. The first petition alleged that, on November 11, 2011, T.M. committed aggravated battery with a razor blade upon a minor, D.D., in violation of La. R.S. 14:34. *972 The second petition alleged that, also on November 11, 2011, T.M. committed aggravated battery with a razor blade upon a minor, L.A., in violation of La. R.S. 14:34.
On January 6, 2012, the juvenile denied the allegations of both petitions. On February 29, 2012, after a full trial, the judge adjudicated D.L. delinquent as charged in both petitions. On March 22, 2012, the trial judge entered a judgment |4of disposition on both petitions imposing, on each count, a sentence of six months in the Office of Juvenile Justice, suspended, and placing defendant on two years active probation with special conditions. On April 11, 2012, the court granted T.M.’s motion for appeal.

Standard of Review

Though delinquency proceedings may in many ways implicate criminal proceedings, they are nonetheless civil in nature. State ex rel. D.R., 01-0405 (La.App. 4 Cir. 10/13/10), 50 So.3d 927, 930 (citing In re C.B., 97-2783 (La.3/4/98), 708 So.2d 391, 400). As this Court, citing State ex. rel Batiste, 367 So.2d 784, 788 (La.1979), noted:
[jjuvenile delinquency proceedings do not fall within the category of criminal prosecutions, as is evident from long established jurisprudence ..., and the special juvenile provisions within the judiciary article of the constitution. La. Const.1974, art. 5, § 10, 18 and 19. Accordingly, since the constitution does not provide otherwise, the scope of review of this court in juvenile delinquency proceedings extends to both the law and the facts. Id.
State in Interest of R.V., 11-138 (La.App. 5 Cir. 12/13/11), 82 So.3d 402, 408. Because juvenile proceedings are not criminal proceedings, the scope of review in Louisiana extends to both law and facts. Id. This “clearly wrong” or “manifestly erroneous” standard of review is the same as is applied in other civil cases. State ex rel. D.R. at 931.
In this case, we apply this civil standard of review of facts and law to determine whether there was sufficient evidence of proof beyond a reasonable doubt to adjudicate T.M. delinquent for aggravated battery. In determining the sufficiency of the evidence, the court must determine whether the evidence, viewed in the light most favorable to the prosecution, is sufficient to convince a rational trier of fact that all of the elements of the crime have been proven beyond a treasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

Law and Argument

In her sole assignment of error, T.M. argues that the State failed to establish that T.M. had the requisite intent to commit the offense of aggravated battery. She asserts rather that her actions amounted to criminal negligence. T.M. also argues that the State failed to prove that the “pencil sharpener razor blade” was a dangerous weapon.
In response, the State argues that the requisite criminal intent was established by the very act of cutting L.A. and D.D. The State also contends that the razor blade is a dangerous weapon, inherently or due to the manner in which it was used.
In order for the court to adjudicate a child delinquent, the State must prove beyond a reasonable doubt that the child committed a delinquent act alleged in the petition. La. Ch.C. art. 883; State in Interest of R.T., 00-0205 (La.2/21/01); 781 So.2d 1239, 1241; State v. B.E., 616 So.2d 211, 214 (La.App. 5 Cir.1993).
In reviewing the sufficiency of the evidence, an appellate court must determine whether, upon viewing the evidence *973 in a light most favorable to the prosecution, any rational trier of fact could find that the State proved ah of the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Neal, 00-0674 (La.6/29/01); 796 So.2d 649, 657, cert. denied, 535 U.S. 940, 122 S.Ct. 1323, 152 L.Ed.2d 231 (2002); State v. Mickel, 09-953 (La.App. 5 Cir. 5/11/10); 41 So.3d 532, 534, unit denied, 10-1357 (La.1/7/11); 52 So.3d 885. The constitutional standard for appellate review in a juvenile proceeding is the same as that in an | (¡adult proceeding. State in Interest of R.T., supra (citing Jackson v. Virginia, supra).
Under the Jackson standard, a review of the record for sufficiency of the evidence does not require the court to ask whether it believes that the evidence at the trial established guilt beyond a reasonable doubt. State v. Jones, 08-20 (La.App. 5 Cir. 4/15/08); 985 So.2d 234, 240. Rather, the reviewing court is required to consider the whole record and determine whether any rational trier of fact would have found guilt beyond a reasonable doubt. Id.
In this case, T.M. was adjudicated delinquent for committing aggravated battery in violation of La. R.S. 14:34. Aggravated battery is defined as “battery committed with a dangerous weapon.” Battery is “the intentional use of force or violence upon the person of another.” La. R.S. 14:33. A dangerous weapon is “any gas, liquid or other substance or instrumentality, which, in the manner used, is calculated or likely to produce death or great bodily harm.” La. R.S. 14:2(A)(3). Accordingly, to convict a person of aggravated battery, the State must prove: (1) that the defendant intentionally used force or violence against the victim; (2) that the force or violence was inflicted with a dangerous weapon; and (3) that the dangerous weapon was used in a manner likely to cause death or great bodily harm. State v. Taylor, 04-54 (La.App. 5 Cir. 4/27/04); 874 So.2d 297, 301, writs denied, 04-1495 (La.11/8/04); 885 So.2d 1120 and 04-1326 (La.11/8/04); 885 So.2d 1122.
First, T.M. disputes that she had the requisite criminal intent to commit an aggravated battery. This Court has held that aggravated battery is a general intent crime. State v. Barnes, 491 So.2d 42, 50 (La.App. 5 Cir.1986). General criminal intent is present whenever there is specific intent, and also when the circumstances indicate that the offender, in the ordinary course of human experience, must have |7adverted to the prescribed criminal consequences as reasonably certain to result from his act or failure to act. La. R.S. 14:10(2). In general intent crimes, criminal intent necessary to sustain a conviction is shown by the very doing of the acts which have been declared criminal. State v. Howard, 638 So.2d 216, 217 (La.1994). Thus, aggravated battery requires neither the infliction of serious bodily harm nor the intent to inflict serious injury. Id.
In the instant case, T.M. held a razor blade in a gloved hand to conceal the blade and perhaps as a precaution against cutting herself. This seems to indicate that T.M. was aware that the blade was capable of inflicting injury. She then offered the pretense of a high-five to her classmates in order to cut them with the blade. Here, the evidence at least supports a finding of general intent: T.M. must have known that some injury was reasonably certain to result from her act of high-fiving her classmates with a razor blade in her hand.
Turning to T.M.’s argument that the pencil sharpener razor blade is not a dangerous weapon, however, virtually any *974 item, no matter how innocuous, can be considered a “dangerous weapon” provided that the manner in which it is used is likely to produce death or bodily harm. State v. Pleasant, 10-1533 (La.App. 4 Cir. 5/18/11), 66 So.3d 51, 56 (citations omitted). Louisiana jurisprudence has upheld determinations that a stick, an ink pen, rum, a tennis shoe, and a metal pipe were dangerous weapons in the manners used in individual cases. Id.
Here, T.M. employed a razor blade taken from a pencil sharpener. The U.S. Supreme Court has implied that a razor blade is a weapon. See U.S. v. Robinson, 414 U.S. 218, 254, 94 S.Ct. 467, 485, 38 L.Ed.2d 427 (1973). Likewise, so have our brethren on the Second Circuit. See State v. Marshall, 46,457, p. 9 (La.App. 2 Cir. 8/10/11), 70 So.3d 1106, 1112.
| ^Regardless of whether a razor blade is an inherently dangerous weapon, the inquiry is whether the manner in which the instrumentality was used, was “calculated or likely to produce death or great bodily harm.” La. R.S. 14:2(A)(3). Here, T.M. used the razor blade to cut the victims’ skin and cause them to bleed. We find no error in the trial court’s finding that the “pencil sharpener razor blade,” in the manner in which it was used in this case, was a dangerous weapon. See, State v. Johnson, 598 So.2d 1152, 1158 (La.App. 1 Cir.1992), writ denied, 600 So.2d 676 (La.1992) (ink pen used to stab the victim in the hand during a robbery was a dangerous weapon).
In conclusion, viewing the foregoing evidence in the light most favorable to the prosecution, we find that the State presented sufficient evidence to convince a rational trier of fact that all the elements of aggravated battery were proven beyond a reasonable doubt. This assignment of error has no merit.

Error patent discussion

As is our routine practice, we have reviewed the record for errors patent, as mandated by La.C.Cr.P. art. 920. State ex rel. T.S., 04-1111, p. 9 (La.App. 5 Cir. 3/1/05), 900 So.2d 77, 82. We note that the transcript reveals that the judge failed to advise T.M. of the two-year prescriptive period for seeking post-conviction relief as mandated by La.C.Cr.P. art. 930.8. Therefore, by this opinion, we advise T.M. that no application for post-conviction relief, including an application which seeks an out-of-time appeal, shall be considered if it is filed more than two years after the judgment of conviction and sentence has become final under the provisions of La. C.Cr.P. arts. 914 and 922. State ex rel. D.W., 09-855 (La.App. 5 Cir. 9/14/10), 47 So.3d 1048, 1063.

AFFIRMED

. The delinquency petitions reflect that T.M. was born on August 10, 1996 so she was 15 years old on the date of the incident. In order to maintain confidentiality, La. Ch.C. art. 412 mandates that any minor involved is referenced only by their initials. See also, La. R.S. 46:1844.

. The teens described "dapping” as slang for "hitting hands” like a low "high five.”

. Apparently, T.M. obtained the "pencil sharpener razor” by dismantling a small, manual sharpener.

. Further, the record contains T.M.’s probation officer's "Report to the Court” indicates that T.M. initially stated, "I’m going to jail. I didn't know a razor from a pencil sharpener could cut someone like that.”