JAMES F. McKAY III, Chief Judge.
_JjThis is a juvenile delinquency case. X.F. appeals the judgment of the juvenile court adjudicating him delinquent of illegal carrying of a weapon in violation of La. R.S. 14:95.[1] For the reasons set forth below, we affirm the adjudication.
STATEMENT OF FACTS AND PROCEDURAL HISTORY
At the adjudication hearing, New Orleans Police Officers Lindy Collins and George Oliver testified on behalf of the State. The defense presented no witnesses.
Officer Collins testified that on December 21, 2012, he and his partner, Officer Oliver, were dispatched on a call of a suspicious person in a vehicle. An individual matching the description given by the dispatcher was seen exiting a vehicle. Officer Collins identified that individual as X.F. When X.F. saw the police unit, he broke and ran. Officer Collins immediately gave chase on foot; as he neared X.F., he saw him reach on the left side of his waistband and discard what was believed to be a semiautomatic weapon. Officer Collins continued to give chase and apprehended X.F. without losing sight of him. After X.F. was handcuffed and detained by another officer, Officer Collins retrieved the weapon 12from the spot where it had been discarded. At trial, Officer Collins identified the recovered weapon, which turned out to be an air pistol. He stated that the air pistol looked and felt like a real firearm.
Officer Oliver testified that he participated with Officer Collins in the investigation and arrest of X.F. on December 21, 2012. Officer Oliver was the driver of the patrol car; he did not pursue X.F. on foot as did Officer Collins. X.F. was identified in open court by Officer Oliver.
X.F. was adjudicated delinquent of illegal carrying of a weapon in violation of La. *1209 R.S. 14:95 and was committed to the Department of Public Safety and Corrections for six months. Execution of the commitment was suspended, and X.F. was placed on two years active probation. X.F. was also found not guilty on two counts of criminal trespass.
On appeal, X.F.’s sole assignment of error is the insufficiency of the evidence. Simply stated, he contends that the State failed to meet its burden of proof.
STANDARD OF REVIEW
Pursuant to La. Ch.C. art. 883, “[i]n order for the court to adjudicate a child delinquent, the [Sjtate must prove beyond a reasonable doubt that the child committed a delinquent act alleged in the petition.” The standard for the State’s burden of proof in a juvenile delinquency proceeding is “no less strenuous then the standard of proof required in a criminal proceeding against an adult.” State in the Interest of J.W., 2012-0048, p. 3 (La.App. 4 Cir. 6/6/12), 95 So.3d 1181, 1184 (quoting State in the Interest of A.G., 630 So.2d 909, 910 (La.App. 4 Cir. 12/30/93)). As a court of review, we grant great deference to the juvenile court’s factual findings, credibility determinations, and assessment of witness testimony. | JState in Interest of S.J., 2013-1025, p. 3 (La.App. 4 Cir. 11/6/13), 129 So.3d 676, 678 (citing State ex rel. W.B., 2008-1458, p. 1 (La.App. 4 Cir. 4/22/09), 11 So.3d 60, 61).
In evaluating the sufficiency of evidence, an appellate court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). The Jackson standard of review is applicable in juvenile delinquency cases. State in the Interest of T.E., 2000-1810, p. 4 (La.App. 4 Cir. 4/11/01), 787 So.2d 414, 417.
In addition, La. Const, art. V, § 10(B) mandates that an appellate court review both law and facts when reviewing juvenile adjudications. “While delinquency proceedings may in many ways implicate criminal proceedings, sometimes even mimicking them, they are nonetheless civil in nature.” State in the Interest of D.R., 2010-0405, p. 5 (La.App. 4 Cir. 10/13/10), 50 So.3d 927, 930 (citing In re C.B., 97-2783, p. 17 (La.3/4/98), 708 So.2d 391, 400). Therefore, as in the review of civil cases, a factual finding made by a trial court in a juvenile delinquency adjudication may not be disturbed by an appellate court unless the record evidence as a whole does not furnish a basis for it, or it is clearly wrong. See State in the Interest of Batiste, 367 So.2d 784 (La.1979). “In sum, we apply the ‘clearly wrong-manifest error’ standard of review to determine whether there is sufficient evidence to satisfy the standard of proof beyond a reasonable doubt.” State in Interest of R.L., 2012-1721, p. 4 (La.App. 4 Cir. 5/30/12), 95 So.3d 1147, 1150.
ANALYSIS
|4La. R.S. 14:95 defines the illegal carrying of weapons as “(1) [t]he intentional concealment of any firearm, or other instrumentality customarily used or intended for probable use as a dangerous weapon, on one’s person.”
La. R.S. 14:2(3) defines “dangerous weapon” as “any gas, liquid or other substance or instrumentality, which, in the manner used, is calculated or likely to produce death or great bodily harm.” “The term ‘dangerous weapon’ is not limit *1210 ed to those instrumentalities ‘which are inherently dangerous, but includes any instrumentality which in the manner used, is calculated or likely to produce death or great bodily harm.”’ State v. Bonier, 367 So.2d 824, 826 (La.1979); See also State in the Interest of Ruschel, 411 So.2d 1216, 1217 (La.App. 4 Cir.1982); State v. Ragas, 2007-0003, p. 8 (La.App. 5 Cir. 5/15/07), 960 So.2d 266, 271. Moreover, it is well established that the “dangerousness” of the instrumentality by reason of the manner in which it is used is a question for the trier of fact. Bonier, 367 So.2d at 826.
As recognized by this Court in State v. Pleasant, 2010-1533, p. 8 (La.App. 4 Cir. 5/18/11), 66 So.3d 51, 56, “virtually any item, no matter how innocuous, can be considered a dangerous weapon provided that the manner in which it is used is likely to produce death or bodily harm.” See also State in the Interest of T.M., 2012-0436, p. 7 (La.App. 5 Cir. 11/27/12), 105 So.3d 969, 973-974. Louisiana jurisprudence has upheld determinations that a stick, an ink pen, rum, a tennis shoe, and a metal pipe were dangerous weapons in the manners used in individual cases. Id.
X.F. argues that the air gun is not a dangerous weapon because it is not a real gun. We find no merit in that argument. In State ex rel. M.B., 2001-2041, p. 2 (La.App. 4 Cir. 3/6/02), 812 So.2d 815, 816, this Court held that the issue of | ¿whether an air gun is a dangerous instrument is a question to be determined at the trial on the merits, not at a motion to quash. In rendering that opinion, we further stated:
Although an air gun is not a firearm, it is an instrument that can cause great bodily harm. See Clark v. Jesuit High School of New Orleans, 96-1307, p. 2 (La.App. 4 Cir. 12/27/96), 686 So.2d 998, 1000 (whereby a “BB” fired from a gun, pierced defendant’s gym bag, and struck victim in the right eye. As a result of this injury, victim is legally blind in his right eye.) Further, in State in the Interest of D.S., a “BB” gun was considered to be a dangerous weapon under La. R.S. 14:34, aggravated battery. 95-1019, p. 2 (La.App. 5 Cir. 4/16/96), 673 So.2d 1123, 1124, writ denied, 96-1237 (La.6/21/96), 675 So.2d 1086. In State in the Interest of D.S., the defendant shot another youth with a “BB” gun, and was charged with aggravated battery, which is a battery “committed with a dangerous weapon.” Id. The defendant admitted the allegations contained in the petition and was placed on probation until his 21st birthday. Accordingly, an air gun cannot be presumed to be a toy and thus not a dangerous weapon.
State ex rel. M.B., 2001-2041, pp. 2-3, 812 So.2d at 816 (footnotes omitted).
Clearly, this Court has recognized that an air pistol is an instrument that can cause great bodily harm. In the present case, we find that the evidence presented by the State supports the juvenile judge’s reasonable conclusion that the air gun in X.F.’s possession was a dangerous weapon within the meaning of La. R.S. 14:2(3).
In State v. Fluker, 311 So.2d 863, 866 (La.1975), the Louisiana Supreme Court enunciated the appropriate test to be applied in prosecutions for illegal carrying of weapons, that is, “under the facts and circumstances of the case as disclosed by the evidence, the manner in which defendant carried the weapon evinced an intent to conceal its identity.” See State ex rel. K.M., 2010-0649, p. 6 (La.App. 4 Cir. 9/29/10), 49 So.3d 460, 464.
X.F. maintains that the State failed to show he carried the air gun in a concealed *1211 manner. He asserts that because Officer Collins never testified regarding the manner in which X.F. carried the air gun, the State did not rule out | Bthe possibility that X.F. carried the gun in a sufficiently exposed manner to reveal its identity. We disagree with X.F.’s characterization of the facts adduced at trial.
Officer Collins testified that as X.F. fled, he reached into his waistband, retrieved the gun, and threw it to the ground. Officer Collins did not see the gun until it was discarded. Under the circumstances, we find that X.F.’s actions were consistent with carrying a weapon that he intended to conceal. Viewing the evidence set forth at trial in a light most favorable to the prosecution, any rational trier of fact could have found that all of the essential elements of the offense of illegal carrying of a weapon were proved beyond a reasonable doubt.
CONCLUSION
For the foregoing reasons, we find no clear error in the juvenile judge’s adjudication of X.F. as delinquent. Accordingly, we affirm.
AFFIRMED.

. X.F. was initially charged with illegal possession of a handgun by a juvenile. The State amended the charge to illegal carrying of a weapon.